IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| David Pankowski, | ) |
| | ) |
| Petitioner, | ) |
| | ) Case No: 3:11-cv-34 |
| v. | ) |
| | ) **REPORT AND** |
| Don Redmann, | ) **RECOMMENDATION** |
| | ) |
| Respondent. | ) |

Petitioner David Pankowski ("Pankowski") filed a petition for habeas relief under 28 U.S.C. § 2254. (Doc. #1). When a prisoner seeks redress from a governmental entity the court must conduct an initial review of the petition prior to service upon the respondent. 28 U.S.C. § 1915A(a).

On March 23, 2010, Pankowski entered a conditional plea of guilty to the charges of manufacturing, delivering, or possessing with the attempt to deliver a controlled substance and fleeing or attempting to elude police. See State v. Pankowski, Case Nos. 28-9-K-364-1, 28-9-K-364-4. Pankowski was sentenced to fifteen years of imprisonment on the drug charge and one year of imprisonment on the fleeing charge to run concurrently. Id.

Pankowski appealed from the state court judgment on the ground that a McLean County Deputy did not have reasonable and articulable suspicion to stop Pankowski's vehicle. State v. Pankowski, 2010 ND 188, No. 20100115, 2010 WL 4132739 (N.D. Oct. 19, 2010). The North Dakota Supreme Court summarily affirmed the state district court's judgment and issued its mandate on November 16, 2010. Id.; http://www.ndcourts.gov/_court/docket/20100115.htm. Pankowski raises the same ground for relief in his habeas petition.

Pankowski states the deputy should not have stopped Pankowski's vehicle because the deputy did not have reasonable and articulable suspicion that Pankowski violated the law or was

about to violate the law because the deputy did not observe illegal activity and did not independently corroborate tips received over the radio. Pankowski contends the evidence seized from his vehicle should have been suppressed.

The court reviewed the briefs filed by Pankowski and the State of North Dakota on appeal with the North Dakota Supreme Court. See Appellant Brief, State v. Pankowski, 2010 ND 188, No. 20100115, 2010 WL 4132739 (N.D. Oct. 19, 2010), http://www.ndcourts.gov/_court/briefs/20100115.atb.htm; Appellee Brief, State v. Pankowski, 2010 ND 188, No. 20100115, 2010 WL 4132739 (N.D. Oct. 19, 2010), http://www.ndcourts.gov/_court/briefs/20100115.aeb.htm. On October 17, 2010, a citizen reported to a McLean County deputy that on Highway 83 a northbound blue vehicle with tail lights all the way across it was driving all over the road and would not let the citizen pass. Appellant Brief at p. 4; Appellee Brief at p. 2. The deputy radioed the complaint to other officers. Appellee Brief at p. 2. Later, a report came across the radio that a Bureau of Indian Affairs police chief reported to dispatch that a white four-door Buick with tail lights all the way across the back was driving all over the road and would not let her pass. Appellant Brief at p. 4; Appellee Brief at p. 2. Deputy Salhus, who was parked along Highway 83, eventually saw a white four-door Buick driving in the passing lane which matched the description of the vehicle described by the witnesses. Id. Deputy Salhus started following the vehicle northbound in an effort to corroborate the reported incidents. Id. Deputy Salhus testified before the state district court that the vehicle was "lane drifting" as follows:

> Well, when I first got behind him, he would go over the lines, he went over the
> outside line and then went back over the inside line and it was like that[.] (Tr. p.
> 10, lines 12-14)[.] He was just all over the road. I mean he was going over the
> line and coming back, lane drifting is what they call it when they go in the lane
> and they just kind of go over to the side and come back right away and go over to

the side and go back over to the other line.  (Tr. p. 11, lines 3-7).

Appellee Brief at p. 3.  According to Deputy Salhus, the "lane drifting" mainly occurred before the video camera in his patrol car was activated.  Appellate Brief at p. 5; Appellee Brief at p. 3.  The video camera records automatically when the emergency lights are activated.  Appellee Brief at p. 3.  Deputy Salhus testified that he waited to activate his lights until his sergeant could get near the location.  Id.  Deputy Salhus eventually pulled the vehicle over.  Appellant Brief at p. 5; Appellee Brief at p. 3.  Pankowski was arrested for reckless endangerment[1] and fleeing in a motor vehicle.  Appellant Brief at p. 6.

Deputy Salhus was the state's sole witness.  Appellant Brief at p. 7.  After the hearing on the motion to suppress the state district court found that the vehicle was identifiable by the tail lights that went all across the back, the fact that the two incident reports identified two different colors of the vehicle was not important because the incident occurred at night and "[c]olors are all in the eyes of the perceiver," that when Deputy Salhus's patrol car approached the vehicle from the back in the passing lane Pankowski had "an obligation to move to the right in a prompt manner," and that the testimony of Deputy Salhus established that Pankowski's vehicle was weaving before Deputy Salhus's camera was activated.  Appellee Brief at p. 4.  The state district judge found those things coupled with the incident reports were "clearly sufficient articulable suspicion for the stop."  Id.

A federal court cannot grant habeas relief on any claim adjudicated on the merits in state court proceedings, unless adjudication of the claim:

---

[1] The reckless endangerment charge was dismissed when Pankowski entered his conditional guilty plea.  See State v. Pankowski, Case no. 28-9-K-364-3.

3

>(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  A state court decision is "contrary to" federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  Williams v. Taylor, 529 U.S. 362, 412-13 (2000).  A state court decision is an "unreasonable application" of federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  Id. at 413.  Section 2254(d) imposes a "highly deferential standard for evaluating state-court rulings," Lindh v. Murphy, 521 U.S. 320, 333, n. 7 (1997), "which demands that state-court decisions be given the benefit of the doubt," Woodford v. Visciotti, 537 U.S. 19, 24 (2002) (per curiam).

"Under Terry [v. Ohio, 392 U.S. 1 (1968)] and its progeny, '[a]n investigative stop is permissible under the Fourth Amendment if supported by reasonable suspicion.'" United States v. Wheat, 278 F.3d 722, 726 (8th Cir. 2001) (quoting Ornelas v. United States, 517 U.S. 690, 693 (1996)).  "If the investigatory stop is not justified by reasonable suspicion . . . any evidence derived from the stop is inadmissible at trial."  Id. (citations omitted).  Reasonable suspicion can arise from information that is less reliable than the information required to establish probably cause, including an anonymous tip.  Id. (citing Alabama v. White, 496 U.S. 325, 330 (1990)).  "If a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of

suspicion than would be required if the tip were more reliable." Id. (quoting Alabama v. White, 496 U.S. 325, 330 (1990)).

Assuming the two incident reports had a low degree of reliability because they conflicted on the color of the car, Deputy Salhus testified that he personally observed the vehicle "lane drifting," which provides the additional information required to establish reasonable suspicion. Pankowski's contentions that Deputy Salhus did not observe illegal activity or independently corroborate the tips are without merit. The state court's finding that Deputy Salhus had sufficient articulable suspicion to stop the vehicle is not contrary to clearly established federal law and is not an unreasonable application of federal law. Accordingly, it is **RECOMMENDED** that:

1. David Pankowski's petition for habeas relief (Doc. #1) **BE DISMISSED** with prejudice;

2. The court certify that an appeal from the dismissal of this action may not be taken *in forma pauperis* because such an appeal would be frivolous and cannot be taken in good faith; and

3. A certificate of appealability not be issued with respect to any of the issues raised by David Pankowski in this action.

Dated this 11th day of April, 2011.

       /s/ *Karen K. Klein*
       Karen K. Klein
       United States Magistrate Judge

## NOTICE OF RIGHT TO OBJECT

Pursuant to Rule 72(a) and (b), Federal Rules of Civil Procedure, and District of North Dakota Local Court Civil Rule 72.1(D)(2) and (3), any party may object to this Report and Recommendation and by filing with the Clerk of Court no later than April 28, 2011, a pleading specifically identifying those portions of the Report and Recommendation to which objection is made and the basis of any objection. Failure to object or to comply with this procedure may forfeit the right to seek review in the Court of Appeals.